IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TODD LOPEZ, as Personal Representative
of The Estate of JOSEPH OROSCO,

        Plaintiff,

vs.                                                             1:23-cv-01127-KK-LF

UNITED VAN LINES, LLC,
SAFEWAY MOVING SYSTEM, INC.,
SAFEWAY LOGISTICS SPECIALTY FLATBED, LLC,
and ANTHONY NOLEN,

        Defendants.

### ORDER DENYING MOTION TO QUASH SUBPOENA

THIS MATTER is before the Court on Defendants' Motion to Quash Plaintiff's Subpoena (Doc. 44), filed May 6, 2024. Plaintiff responded on May 16, 2024 (Doc. 46), and defendants filed their reply on May 30, 2024 (Doc. 47). Having considered the briefing and the relevant law, I find that plaintiff's subpoena seeks relevant information that is proportional to the needs of the case; I therefore DENY defendants' motion.

This case arises from a distressing incident on the morning of November 5, 2023, in which defendant Anthony Nolen inadvertently crushed and killed Joseph Orosco while moving his tractor-trailer. *See* Doc. 44 at 2–3. At the time of the incident, Mr. Nolen had a) recently arisen after sleeping in the parking lot where the incident occurred and b) been employed by defendants United Van Lines, Safeway Moving System, and Safeway Logistics (the "corporate defendants")[1] for only a few weeks. *See id.*; Doc. 46 at 1–4. One theory of plaintiff's case is that

---

[1] It is not clear from the parties' submissions which entity was Mr. Nolen's employer, but that question is not crucial to the resolution of the motion to quash.

the corporate defendants were negligent in hiring, training, and supervising Mr. Nolen. Doc. 14 at 4; Doc. 46 at 5.

On April 22, 2024, plaintiff served a subpoena on Verizon, Mr. Nolen's cell service provider, seeking a comprehensive array of Mr. Nolen's cell phone records from 12:01 A.M. on October 22, 2023, to 1:00 P.M. on November 5, 2023. Doc. 44 at 1, 13–16. Defendants move the Court either to quash this subpoena or to enter a protective order substantially limiting the timeframe of production. Doc. 44 at 6, 8. They argue that the subpoena seeks records from an overly broad timeframe and records that could include privileged information and/or work product, that the subpoena amounts to a fishing expedition, and that the subpoena attempts to circumvent both the normal discovery process and a prior agreement concerning production of data from Mr. Nolen's cell phone. *Id.* at 5–8.

Plaintiff argues that the requested records likely will provide a range of evidence relevant to evaluating his claims of negligent hiring, training, and supervision, and are necessary in part because Mr. Nolen did not provide substantive responses to many questions during his deposition. *See* Doc. 46 at 2–6. Plaintiff further argues that defendants, as movants, bear the heavy burden of establishing grounds for quashing the subpoena, and have not borne this burden. *Id.* at 6. In particular, he argues that Mr. Nolen does not have a legitimate expectation of privacy in cell tower records, and that the corporate defendants have no standing to oppose the subpoena.[2] *Id.* at 7. Finally, plaintiff argues that other discovery proceedings between the parties provide no basis for limiting the discovery of evidence from Verizon, a third party. *Id.* at 7–8.

---

[2] It is not clear from plaintiff's response whether plaintiff is arguing that Mr. Nolen also has no standing to oppose the subpoena, or has standing but does not have an interest sufficient to prevent discovery of relevant information. The Court therefore addresses both issues.

As an initial matter, I find that Mr. Nolen has a sufficient interest in the subpoenaed records to oppose the subpoena.[3] Plaintiff's subpoena seeks more than the "numerical information [Mr. Nolen] convey[ed] to a telephone company in the ordinary course of business." *Rehberg v. Paulk*, 611 F.3d 828, 843 (11th Cir. 2010). It seeks "[a]ny and all documents, papers, writings, digital records, or things within [Verizon's] possession . . . which relate in any way to" Mr. Nolen's cell phone account from just after midnight on October 22, 2023, to November 5, 2023, at 1:00 p.m. Doc. 44 at 13. This request includes, *inter alia*:

1. All location information created when Mr. Nolen's phone utilized Verizon's network, including records made when Mr. Nolen's phone used cellular data—a set of records that could amount to a nearly continuous record of Mr. Nolen's location for two weeks;

2. Records of all calls and texts created or received by Mr. Nolen, including the numbers with which he corresponded, the duration of calls, text message content, and voicemails;

3. All electronically stored records, which could include, *inter alia*, "e-mail, digital images (e.g., pictures), contact lists, video calling, web activity . . . ," and "date and time when all web sites, applications, and/or third party applications were accessed and the duration of each . . .";

4. Records stored by proprietary Verizon applications;

---

[3] Defendants argue that *all* defendants have standing to "move for a protective order to prevent the discovery of irrelevant information." Doc. 47 at 2. Because Mr. Nolen's standing is sufficient to consider this matter, and because I conclude that the subpoenaed records are relevant, I do not address whether the corporate defendants also have standing to challenge the subpoena.

5. Content stored in cloud storage accounts, including "audio, video, and image files . . . and files or documents"; and

6. All records, including customer service records, that Verizon has on Mr. Nolen as a subscriber.

*See* Doc. 44 at 13–16.

"Courts have long held that in the context of civil discovery, an individual has a personal interest in certain records—e.g., bank records, mental health or medical records, employment records—sufficient to provide standing to challenge a subpoena for their disclosure, even where that information is maintained by a third party." *Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, at *2 (N.D. Okla. Aug. 6, 2015); *see also Kizer v. Starr Indem. & Liab. Co.*, No. CIV-18-846-D, 2019 WL 2017556, at *2–3 (W.D. Okla. May 6, 2019) (finding that personal interest in cell phone records created standing to challenge subpoena); *Waters v. Hall*, No. CV 19-0798-KD-C, 2020 WL 12948069, at *2 (S.D. Ala. Apr. 21, 2020). Mr. Nolen has a personal interest in the comprehensive information sought in plaintiff's subpoena, and thus has standing to challenge that subpoena.

Mr. Nolen's personal interest, however, does not provide a reason to prevent the discovery of relevant information. As the party seeking to quash a subpoena, defendants bear "a particularly heavy burden" to show that the subpoena falls afoul of one of the reasons to quash enumerated in Fed. R. Civ. P. 45(d)(3). *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982); *see also DeVargas v. Bd. of Cnty. Commissioners for Santa Fe Cnty.*, No. 1:21-CV-00271-RB-SCY, 2022 WL 1500619, at *2 (D.N.M. May 12, 2022); *BuzzFeed, Inc. v. U.S. Dept. of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). A personal privacy interest is not among those enumerated reasons. *See* Fed. R.

4

CIV. P. 45(d)(3). Nor do defendants articulate reasons why Mr. Nolen's privacy should prevent or limit the scope of discovery sought by the subpoena. Defendants argue only that the subpoena "is overly broad in its scope of time as it seeks records for hours and days before the unfortunate incident occurred, as well as hours after . . . therefore seeking irrelevant information . . . ." Doc. 44 at 5. I disagree that the subpoena is overly broad in scope of time and find that it requests relevant information. The requested records likely will allow plaintiff to establish Mr. Nolen's whereabouts, driving practices, and compliance with time logging and other requirements in the weeks leading up to the incident, as well as the degree and nature of supervision provided by the corporate defendants. This information is relevant to plaintiff's negligent hiring, training, and supervision claims.

Defendants argue that only records created close to the time of the incident—that is, records from the time Mr. Nolen arrived at the Truck Center up until shortly after the incident—will contain relevant information, and they request a protective order limiting the records to this timeframe. Doc. 44 at 6, 8. They cite three analogous cases in support of this limitation: *Clark*, 2015 WL 4694045; *Waters*, 2020 WL 12948069; and *Kizer*, 2019 WL 2017556. Each case involved a motor vehicle accident and a similar subpoena to that at issue here, and in each case the court concluded that although the requested records were relevant to show whether a driver was distracted or fatigued at the time of the accident, the requested timeframe was too broad. *See Clark*, 2015 WL 4694045, at *2 (records relevant to distraction but limited to one hour); *Kizer*, 2019 WL 2017556, at *3 (records relevant to negligence, fatigue, and distraction but limited to twenty-four hours before and two hours after incident); *Waters*, 2020 WL 12948069, at *2–3 (records relevant to negligence, fatigue, and distraction but limited to twenty-four hours before and two hours after incident).

This case differs from the three cases cited above: plaintiff seeks records not only to determine whether Mr. Nolen was fatigued or distracted at the time of the incident, but also to determine whether the corporate defendants were negligent in their hiring, training, and supervision of Mr. Nolen. This difference renders discoverable a broader timeframe of records. "A discovery request should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Quarrie v. Wells*, No. 2:17-cv-00350-MV-GBW, 2020 WL 1514798, at *3 (D.N.M. Mar. 30, 2020) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2002)) (internal quotation marks omitted).

Given Mr. Nolen's unresponsive answers during his deposition and especially given that Mr. Nolen's phone was used in lieu of a functional logging device within his tractor, *see* Doc. 50 at 28–30,[4] there is a strong possibility that records ranging as far back as two weeks before the incident will bear on plaintiff's claims. Mr. Nolen testified that he started working for defendants two to three weeks before the accident. *Id.* at 5. He used his phone to electronically log his trips, and he received dispatch instructions by text message and emails, indicating that his phone was integral to his work and the corporate defendants' supervision of him. *Id.* at 14–17, 28–30. He also testified that when he discovered he had run over Mr. Orosco, he immediately called 911, then called his company but couldn't remember whom he talked to, and that someone—he didn't remember who—called him later that day to terminate his employment. *Id.* at 24–27. Mr. Nolen's phone records shortly after the accident will help plaintiff establish these facts with more precision. The records sought also may help plaintiff piece together when Mr. Nolen started

---

[4] Document 50 contains excerpts from Mr. Nolen's deposition. Page citations to Document 50 refer to the CM/ECF page number in the upper right-hand corner of each page, not the internal deposition page numbers.

working for defendants, where he was when he started to work for defendants, and what sort of training he received and where—all of which Mr. Nolen could not recall. *See id.* at 5–14.

I am not persuaded by defendants' contention that the requested records, specifically those in the three hours and thirty minutes following the incident, could include attorney work product or other privileged information. *See* Doc. 44 at 5. Communications between Mr. Nolen and his employers are not privileged, and defendants point to no evidence that Mr. Nolen directly communicated with an attorney in the hours following the incident, or that the substance of any such conversation would be captured in the records requested. Likewise, I am not persuaded by defendants' argument that a prior agreement between counsel setting the limits of a download of records from Mr. Nolen's cellphone should impose equivalent limits on the records discoverable from a third party; nor by their argument that an unchallenged objection to a Request for Production tangentially related to the subject matter of the subpoena forecloses discovery from a third-party. *See id.* at 6–8. I find that plaintiff's subpoena requests relevant records proportional to the needs of the case, and I find no reason to quash the subpoena or limit its timeframe. I therefore DENY defendants' Motion to Quash.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge